THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CATHIE EVANS, AS NEXT FRIEND OF § | | |
| XXXXXXXX XXXXXX, Minor Child, § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| VS. § | | CIVIL ACTION NO. H-15-659 |
| § | | |
| KAWASKI MOTORS CORP., USA § | | |
| AND BAYOU CITY MOTORSPORTS, § | | |
| INC. D/B/A KAWASAKI OF PASADENA, § | | |
| § | | |
| Defendants. § | | |

## MEMORANDUM AND OPINION

Cathie Evans sued Kawasaki Motors Corp., USA ("Kawasaki") and Bayou City Motorsports Inc. d/b/a Kawasaki of Pasadena ("Bayou City"), seeking damages on her child's behalf. The child was injured riding on a Kawasaki all-terrain vehicle. Evans sued in Texas state court, claiming a defective product, breach of warranty, negligence, and gross negligence. Kawasaki timely removed, asserting that Evans had improperly joined Bayou City to defeat federal diversity jurisdiction. Kawasaki argued that Texas law protects a nonmanufacturing seller from product-liability actions and that Evans has no reasonable basis to recover against Bayou City under state law. *See* TEX. CIV. PRAC. & REM. CODE § 82.003; (Docket Entry No. 1). Evans moved to remand, asserting that she adequately pleaded exceptions to that statute. In the alternative, she requested leave to amend her petition to do so. (Docket Entry No. 8 at 6–7, 10). Based on the pleadings, (Docket Entry No. 1 Ex, A-2; Docket Entry No. 2), the motions and responses, (Docket Entry Nos. 1, 8, 11), the parties' arguments and submissions, and the applicable law, the court denies Evans's motion to remand and

1

her request for leave to amend. (Docket Entry No. 15). The reasons are explained below.

## I. Background

The background facts are taken from Evans's state-court petition. She alleged that on or about June 29, 2013, her son was riding behind his grandfather on a Kawasaki all-terrain vehicle called a Mule. (Docket Entry No. 1, Ex. A-2 at 3). The grandfather had purchased the vehicle from Bayou City. (*See id.*). The vehicle's coolant tank erupted shortly after they started driving, spewing boiling water and antifreeze onto the child and causing severe lower body burns. (*Id.*). Evans sued both Kawasaki, a Delaware corporation with its principal place of business in California, and Bayou City, a Texas corporation, in Texas state court. She asserted claims against Kawasaki for strict products liability for a design defect, a manufacturing defect, and a marketing defect based on failure to warn; breach of warranty; and simple and gross negligence. She asserted only negligence and gross negligence claims against Bayou City. (Docket Entry No. 1, Ex. A-2 3–7). The issue is improper joinder.

## II. The Legal Standard

A defendant may remove a case to federal court when federal subject-matter jurisdiction exists and the removal procedure has been properly followed. *See* 28 U.S.C. § 1441; 28 U.S.C. § 1332(a). Although there is complete diversity between Evans (a Texas citizen) and Kawasaki (a citizen of both Delaware and California), Bayou City is a citizen of Texas.[1] If properly joined, Bayou City's presence in the suit as an instate defendant precludes federal removal jurisdiction.

---

[1] Because Evan's petition seeks "over $200,000.00," it is facially apparent that the amount in controversy exceeds $75,000 dollars. (Docket Entry No. 1, Ex. A-2 at p. 2).

To determine improper joinder, the issue is whether Evans has stated a valid state law cause of action against Bayou Motors. "[A] removing defendant [need not] demonstrate an absence of *any possibility* of recovery . . . the defendant must demonstrate only that there is no *reasonable basis* for predicting that the plaintiff will recover in state court." *Gray ex rel. Rudd v. Beverly Enters.-Miss., Inc.*, 390 F.3d 400, 405 (5th Cir. 2004) (emphasis in original). A "mere theoretical possibility of recovery under local law" is not enough. *See Badon v. RJR Nabisco, Inc.*, 236 F.3d 282, 286 n.4 (5th Cir. 2000); *accord Ross v. Citifinancial, Inc.*, 344 F.3d 458, 462 (5th Cir. 2003).

In *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc), *cert. denied*, 544 U.S. 992 (2005), the Fifth Circuit clarified the procedure for determining whether there is a reasonable basis for recovery against the in-state defendant. A court may conduct a Rule 12(b)(6) analysis, examining the allegations in the complaint to determine whether they state a claim under state law against the instate defendant, or, after examining the pleadings, decide to conduct a summary inquiry. *Smallwood*, 385 F.3d at 573–74. Generally, if a plaintiff's pleading survives the Rule 12(b)(6) analysis, then there is no improper joinder. *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 309 (5th Cir. 2005). The state-court petition filed when the case is removed controls the analysis. *Bell v. Thornburg*, 743 F.3d 84, 85–86 (5th Cir. 2014) (per curiam) (citing *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995) ("Limiting the removal jurisdiction question to the claims in the state court complaint . . . permits early resolution of which court has jurisdiction, so that the parties and the court can proceed with, and expeditiously conclude, the litigation.")). In determining whether the plaintiff has a reasonable basis for recovery on at least one claim under state law, the district court is limited to the causes of action and allegations asserted in the complaint. *Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 668–69 n.2 (5th Cir. 2007); *see*

*Freeport–McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991) (per curiam). The district court must resolve all factual disputes and ambiguities in state law in favor of the plaintiff. *Travis*, 326 F.3d at 649; *McKee v. Kan. City S. Ry. Co.*, 358 F.3d 329. 333 (5th Cir. 2004). If the record reveals a reasonable basis of recovery on any single cause of action, a court must remand the entire suit to state court. *Gray*, 390 F.3d at 412 (presence of unavailing claims does not defeat remand); *Rainwater v. Lamar Life Ins. Co.*, 391 F.3d 636, 638 (5th Cir. 2004).

III.    **Analysis**

    A.    **Whether the Texas Pleading Standards Govern the Improper Joinder Inquiry**

Under the Texas Rules of Civil Procedure, pleadings may contain legal conclusions as long as the allegations as a whole give fair notice to the opponent. TEX. R. CIV. P. 42(b). Texas courts "construe the pleadings liberally in favor of the plaintiffs, and look to the pleader's intent" to determine if they have jurisdiction to hear the case. *Tex. Dept. of Parks and Wildlife v. Miranda*, 133 S.W.2d 217. 226 (Tex. 2004). Most Texas federal courts measure pleading sufficiency under the Texas fair-notice pleading standard, which is more lenient than the standard under Rule 8 of the Federal Rules of Civil Procedure. *See, e.g., See Escalante v. Goodyear Tire & Rubber Co.*, 2015 WL 3770929, at *2 (S.D. Tex. June 17, 2015) (joining "a number of other federal courts that apply Texas 'fair notice' pleading rules in removal decisions, rather than federal rules and standards" (citing cases)); *see generally Edwea Inc. Allstate Ins. Co.*, 2010 WL 5099607 at *4–6 (S.D. Tex. Dec. 8, 2010). Some courts apply the federal pleading standard even when the state pleading standard is more lenient. *See, e.g., Doucet v. State Farm Fire and Cas. Co.*, No. 1:09–CV142, 2008 Wl 3157478, at *5 (E.D. Tex. Sept. 25, 2009); *First Baptist Church of Meuriceville Tex. v. Guideone Mut. Ins. Co.*, No. 1:07–CV–998, 2008 WL 2730890, at *4 (E.D. Tex. Sept. 29, 2008). The majority

4

approach is consistent with the general approach to removal jurisdiction. *See, e.g., Henderson v. Wash. Nat'l Ins. Co.*, 454 F.3d 1278, 1284 (11th Cir. 2006) ("[T]he decision as to the sufficiency of the pleadings is for the state courts, and for a federal court to interpose its judgment would fall short of the scrupulous respect for the institutional equilibrium between the federal and state judiciaries that our federal system demands."). This approach also avoids another problem in using the stricter federal pleading standards to analyze a Texas state-court petition for improper joinder. A dismissal for failure to meet the Rule 8(a)(2) or 9(b) pleading requirements is usually with leave to amend to attempt to cure the factual insufficiency, which is in tension with the rule that the pleading on file when the case is removed governs. This court agrees with the majority of courts that have ruled on this issue and applies the Texas pleading-sufficiency standard to each of the claims asserted against Bayou City, the instate defendant.

### B. Whether the Pleading Allegations Provide a Reasonable Basis for Recovery Against Bayou City

Evans's state-court petition asserts only negligence and gross negligence claims against Bayou City. Chapter 82 of the Texas Civil Practice and Remedies Code governs product liability actions. A "products liability action" is:

> any action against a manufacturer or seller for recovery of damages arising out of personal injury, death, or property damage allegedly caused by a defective product whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories.

TEX. CIV. PRAC. & REM. CODE § 82.001. In 2003, the legislature added § 82.003, limiting a plaintiff's ability to recover against nonmanufacturing sellers in a products-liability action. Section

5

82.003 states that a nonmanufacturing seller[2] "is not liable for harm caused to the claimant by that product unless the claimant proves":

(1) that the seller participated in the design of the product;

(2) that the seller altered or modified the product and the claimant's harm resulted from that alteration or modification;

(3) that the seller installed the product, or had the product installed, on another product and the claimant's harm resulted from the product's installation onto the assembled product;

(4) that:

    (A) the seller exercised substantial control over the content of a warning or instruction that accompanied the product;
    (B) the warning or instruction was inadequate; and
    (C) the claimant's harm resulted from the inadequacy of the warning or instruction;

(5) that:

    (A) the seller made an express factual representation about the aspect of the product;
    (B) the representation was incorrect;
    (C) the claimant relied on the representation in obtaining or using the product; and
    (D) if the aspect of the product had been as represented, the claimant would not have been harmed by the product or would not have suffered the same degree of harm;

(6) that:

    (A) the seller actually knew of a defect to the product at the same time the seller supplied the product; and
    (B) the claimant's harm resulted from the defect; or

---

[2] A "[s]eller" means an entity that "is engaged in the business of distributing or otherwise placing, for any commercial purpose, in the stream of commerce for use or consumption a product or any component part thereof." TEX. CIV. PRAC. & REM. CODE § 82.001.

6

>  (7) that the manufacturer of the product is:
>
>   (A) insolvent; or
>   (B) not subject to the jurisdiction of the court.

TEX. CIV. PRAC. & REM. CODE. § 82.003(a) (2003).

Any recovery theory pleaded against a nonmanufacturing seller, such as Bayou City, must invoke one of the seven exceptions in § 82.003(a) "even if the claim would otherwise state a valid claim under Texas Law." *State Farm Lloyds v. Polaris Indus., Inc.*, 2012 WL 3985128 at *2 (S.D. Tex. 2012); *Alonso v. Maytag Corp.*, 356 F. Supp. 2d. 757, 761 (S.D. Tex. 2005). "[T]he [p]laintiffs[s'] pleadings need not specifically cite to any of the seven exceptions . . . ; so long as the [p]laintiffs fairly state a claim that falls within any one or more of the exceptions, remand is appropriate." *Casas v. The Tire Corral, Inc.*, 2005 WL 6773889, at *1 (S.D. Tex. Mar. 31, 2005).

Evans argues that her petition implicates exception (6)—that Bayou City "actually knew of a defect to the product at the same time [it] supplied the product" and that her child's "harm resulted from the defect." *See* TEX. CIV. PRAC. & REM. CODE § 82.003(a)(6). (Docket Entry No. 8 at 8–9). In her state-court petition, however, Evans's factual allegations against Bayou City were limited to one paragraph. She alleged:

> A. Negligence and Gross Negligence
>
> Defendant Bayou City Motorsports sold the vehicle in question. Bayou City Motorsports failed to warn Plaintiff of the vehicle's dangers and did not ensure that the vehicle was in a safe condition. Defendant Bayou City Motorsports committed acts of omission and commission which collectively and severally constituted negligence and gross negligence, and that negligence proximately caused the Minor Child's injuries.

(Docket Entry No. 1, Ex. A-2, at 8 (emphasis omitted)). Evans contends that Bayou City could infer from the petition's gross-negligence allegations that it "allege[d] actual knowledge" under

7

§ 82.003(a)(6). She points to the Texas statutory definition of gross negligence, which requires "an act or omission . . . of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others." TEX. REM. & PRAC. CODE § 41.001(11).

Evans's argument that Bayou City could infer a claim of "actual knowledge" from her gross-negligence allegations does not meet the fair-notice standard. Section 82.003 "'protect[s] innocent sellers who are drawn into products liability litigation solely because of the vicarious nature of that liability'" by requiring that the seller "know," not "should have known," that the product it sold had the defect that caused the plaintiff injury. *See Mix v. Target Corp.*, 759 F. Supp. 2d 876, 880 (W.D. Tex. 2010) (quoting *Gen. Motors Corp. v. Hudiburg Chevrolet, Inc.*, 199 S.W.3d 249, 262 (Tex. 2006)). "'Under [§ 82.003(a)(6)], . . . liability cannot be based on an allegation that a seller should have known of a defect in a product.'" *Patton v. Nike, Inc.*, 2015 WL 1546246, at *3 (E.D. Tex. Apr. 7, 2015) (quoting *Rubin v. Daimlerchrysler Corp.*, 2005 WL 1214605, at *6 (S.D. Tex. May 20, 2005)); *see also Reynolds v. Ford Motors Co.*, 2004 WL 2870078, at *3 (N.D. Tex. Dec. 13, 2004) ("The language of section 82.003 clearly requires actual knowledge of the defect on the part of the seller. . . . Section 82.003 makes no reference to what a seller should have known or foreseen."). "Publicly available information about a product defect—such as stories on the internet, in newspapers, or lawsuits against the manufacturer—are not sufficient to establish this exception unless a plaintiff can prove that the seller received that information." *Blythe v. Bumbo Int'l Trust*, 2013 WL 6190284, at *6 (S.D. Tex. Nov. 26, 2013). "The statute . . . requires that the knowledge acquired by the defendant must relate to the defect. Information about the injury is not enough—the defendant's actual knowledge must relate to the defect itself." *Id.*

Evans's argument fails because under Texas law, "actual knowledge" of a specific product defect is not a required element of either negligence or gross negligence. Under Texas law, gross negligence requires only "actual, subjective awareness" of an extreme risk and "conscious indifference to the rights, safety, or welfare of others." TEX. CIV. PRAC. & REM. CODE § 41.001 (11)(B). The actual knowledge requirement is imposed under § 82.003(a)(6), and defeats the contention that it is proper to infer actual knowledge from the gross negligence allegation against Bayou City. In *Garcia v. Nissan Motor Co.*, 2006 WL 869944 at *1 (S.D. Tex. Mar. 30, 2006), for example, the plaintiff sued a car manufacturer and the nonmanufacturing seller for injuries he and his son received in an accident. The defendants removed based on improper joinder of the instate seller. The plaintiff invoked § 82.003(a)(6), asserting that the instate defendant had sold the vehicle without side-curtain airbags despite "knowing the dangers inherent in vehicles that lacked side-curtain airbags" and sold the car without electronic stability control "despite its knowledge of the availability and benefits of electronic stability control." *Id.* at *2. The court held that the nonmanufacturing seller's knowledge "of a condition in or of a product without actual knowledge that the condition renders the product defective [was] insufficient to satisfy" § 82.003(6). *Id.* at *3; *see also id.* ("While Local Defendant certainly had knowledge that a car with side-impact airbag or stability control could or would be safer than a car without these features, this is not equivalent to knowing that the lack of these features rendered the product defective.").[3] The court reached a similar result in *Benavides v. Chrysler Group, LLC*, 2014 WL 5507716 (S.D. Tex. Oct. 9, 2014).

---

[3] *See also In re Yamaha Motor Corp. Rhino ATV Prods. Liab. Litig.*, 2009 WL 939279, at *1 n.1 & (W.D. Ky. Apr. 6, 2009) (applying Texas law and granting the nonmanufacturing seller's motion to dismiss based on § 82.003 despite the fact that the plaintiffs had alleged negligence and gross negligence and had argued that "they have stated a negligence claim against [the seller]").

In this case, the plaintiff's wife "died when her 2002 Dodge Ram . . . rolled over in a car accident." *Id.* at *1. The plaintiff sued the vehicle manufacturer and the nonmanufacturing instate dealer in Texas state court, alleging strict liability, negligence, and breach of warranty. *Id.* The manufacturer removed asserting that the instate dealer was improperly joined, and the plaintiff moved to remand, because he had "pled the 'actual knowledge' exception under [§] 82.003(a)(6)." *Id.* at *4. The state-court petition had mentioned the dealer's knowledge in "a total of three paragraphs":

> (51) There was a complete failure by Defendants Chrysler and [the dealer] to provide any warnings regarding the Ram's lack of ESC to prevent loss of directional control, *which risk was known or by the application of reasonably developed human skill and foresight should have been known* to said Defendants. This failure rendered the Ram unreasonably dangerous as marketed.
>
> (52) There was a complete failure by Defendants Chrysler and [the dealer] to provide any warnings regarding the Ram's lack of crashworthiness in a rollover crash, *which risk was known or by the application of reasonably developed human skill and foresight should have been known* to said Defendants. This failure rendered the Ram unreasonably dangerous as marketed.
>
> (53) [The dealer] committed acts of omission and commission in selling the Ram without warning of potentially dangerous aspects of the vehicle, its roof structure and its seat belt restraint system. Such acts or omissions, taken separately or together, constitute negligence. Furthermore, [the dealer] is independently negligent and liable for providing incorrect factual representations regarding the product upon which there was reliance and *in failing to disclose known product defects*.

*Id.* (quoting and emphasizing petition) (footnotes omitted).

Citing *Garcia*, the district court concluded that the first two paragraphs alleging knowledge did not "show that [the dealer] Defendants had *actual knowledge* of the defect when they sold the Ram to" the decedent because "'[a] nonmanufacturing seller is not liable for a product's defects simply because it could have or should have known that a product was defective.'" *Id.* (quoting *Garcia*, 2006 WL 869944, at *3). As a result, the "the only allusion in the entire complaint of actual

knowledge [was] in paragraph (53), a blanket statement that [the dealer] 'fail[ed] to disclose *known product defects.*'" *Id.* (quoting petition) (emphasis original).[4] That was insufficient. *See also Casas v. The Tire Corral, Inc.*, 2005 WL 6773889, at *1 (S.D. Tex. Mar. 31, 2005)(a tire rim on the decedent's vehicle malfunctioned, causing a fatal accident; on a motion to remand to state court based on the claims against the instate nonmanufacturing seller, the court held that the § 82.003(a)(6) actual-knowledge exception did not apply because the petition failed to "allege that [the nonmanufacturing seller] had knowledge of a hole in the tire or any other specific defect at the time of sale or otherwise," *id.* at *6, and § 82.003(a)(6) required knowledge "of a defect to the product *at the time the seller supplied the product*," the plaintiffs could not "possibly recover for strict liability, gross negligence, breach of warranty, and/or misrepresentation against [the nonmanufacturing seller]." (emphasis in original)).

Evans's petition is similar to the pleadings that courts have found insufficient. The petition alleges that Bayou City was grossly negligent in selling the Kawasaki Mule, but it does not allege that Bayou City had actual knowledge of the alleged product defect that injured her son when it sold the Mule. Evans cites several cases in which district courts have granted motions to remand based on § 82.003(a)(6). Each is distinguishable on the basis that the plaintiffs alleged that the nonmanufacturing seller actually knew of a defect at the time of sale. In *Shields v. Bridgestone Firestone N. Am. Tire, LLC*, 502 F. Supp. 2d 497 (W.D. Tex. 2005), for example, the plaintiff sued a tire manufacturer, an automobile manufacturer, and an instate dealership in Texas state court, alleging various products-liability claims. *Id.* at 498. The tire manufacturer removed on the basis

---

[4] The court went on to pierce the pleadings on this allegation and concluded that the undisputed evidence showed that the plaintiffs failed to "meet the 'actual knowledge' exception to Section 82.003(a)." *Benavides*, 2014 WL 5507716, at *6.

11

of diversity jurisdiction, asserting that the plaintiff had improperly joined the instate dealership. The court found that the plaintiff had satisfied § 82.003(a)(6) by pleading that the defendant "'failed to give adequate warnings of the vehicle's dangers that were *known* or by the anticipation of reasonable developed human skill and foresight should have been known,'" and that the defect had caused the plaintiff's injuries. *Id.* at 501 (quoting petition) (emphasis in original).

In *Reynolds v. Ford Motor Co.*, 2004 WL 2870079 (N.D. Tex. Dec. 13, 2004), the plaintiff's daughter was killed in a "single vehicle rollover accident involving a 1998 Ford Explorer SUV." *Id.* at *1. The plaintiff sued Ford and the nonmanufacturing dealer in Texas state court, alleging "negligence, misrepresentation, fraud, and strict liability." *Id.* Ford removed to federal court, arguing that the instate dealer was improperly joined. The district court granted the plaintiff's remand motion based on § 82.003(a)(6). Although the statute "clearly requires actual knowledge of the defect on the part of the seller" and "makes no reference to what a seller should have known or foreseen," the court found that the plaintiff's state-court petition adequately pleaded actual knowledge. Unlike Evans's petition, the petition in *Reynolds* alleged that "'[d]efendants knew of' the alleged risk that the Ford Explorer SUV's defects created a high probability that it would be involved in rollover accidents," that "'[t]he selling dealer actually knew of a defect to the product at the time the dealer supplied the product, and [the plaintiff's daughter's] harm resulted from such defect,'" and "that 'Defendants knew the actual characteristics of the Ford Explorer SUV.'" *Id.* at *3 (quoting petition). Based on these allegations, the court concluded that the plaintiff had "sufficiently pleaded that [the instate dealer defendant] had actual knowledge of a defect at the time the dealer supplied the product and that Plaintiff's harm resulted from such defect," as required by § 82.003(a)(6).

In *Sanders v. Husqvarna, Inc.*, 2012 WL 521062 at *3 (S.D. Tex. Oct. 22, 2012), a lawnmower exploded when the plaintiff tried to start it, causing him and his son second- and third-degree burns. *Id.* at *1. He sued the manufacturer and the instate seller in Texas state court. The manufacturer removed, arguing that the instate vendor was improperly joined. *Id.* The plaintiff invoked § 82.003(a)(6), pointing to the allegations that the nonmanufacturing seller "knew, or in the exercise of ordinary care should have known, that the [lawnmower] was defective. . . ." *Id.* at *2. Relying on *Shields* and *Reynolds*, the district court held that the plaintiff's use of the word "knew" satisfied § 82.003(a)(6). *Id.* at *3. Evans did not allege that Bayou Motors had actual knowledge of the Mule's defect that injured her son.

In *Brewer v. Porsche Cars N. Am., Inc.*, 2005 WL 292417 at *1 (N.D. Tex. Feb. 7, 2005), the plaintiffs had leased a Porsche from an instate dealer. The car's hood abruptly blew back against the windshield when the plaintiffs were driving on a highway. *Id.* The plaintiffs filed suit against the manufacturer (Porsche) and the instate dealer in Texas court, alleging products liability, violations of the Deceptive Trade Practices Act, and negligence. *Id.* Porsche removed based on improper joinder of the local car dealer, and the court granted the plaintiffs' motion to remand. The plaintiffs had alleged that the "'[d]efendants failed to disclose information known at the time of the leases about the vehicles with the intention to induce [the p]laintiffs into transactions they otherwise would not have entered.'" *Id.* at *2 (quoting petition). "By this language," the district court concluded, the plaintiffs' state-court pleading "plainly allege[d] that both [d]efendants possessed actual knowledge of a defect in the [vehicle]. . . at the time" the defendants leased the vehicles to the plaintiff and "that the defect [was] the cause of their damages," as required by § 82.003(a)(6). As

13

a result, Porsche failed to meet its burden to prove that the instate dealer was improperly joined.[5]

By contrast to the pleadings in the cases Evans cites, her state-court petition pleaded only that Bayou City "sold the vehicle" and was "grossly negligent" in doing so. (Docket Entry No. 1, Ex. A-2 at p. 7). Evans's state-court petition does not allege that Bayou City had actual knowledge of any defect. Section 82.003 precludes finding a reasonable basis to predict that a state court could find Bayou City liable. Evans's allegations against Bayou City do not invoke any of the § 82.003 exceptions to the limits on a nonmanufacturing seller's liability.[6]

Because Kawasaki has met its burden to show that Bayou City was improperly joined, Evans's motion to remand is denied.

### C. Evans Cannot Amend Her Pleading to Defeat Removal

Evans has alternatively requested leave to amend her pleadings. (Docket Entry. No. 8). After removal, a "plaintiff cannot rob the district court of subject matter jurisdiction by electing to amend away the grounds for federal jurisdiction." *Bunyard v. Mem'l Hosp. Sys.*, 2011 WL 2193371 at *12 (S.D. Tex. June 6, 2011) (quoting *Jackson v. Hous. Indep. Sch. Dist.*, 2010 WL 1948238 at *3 (S.D. Tex. May 12, 2010) (quotations and citations omitted)); *see also Boelns v. Redman Homes, Inc.*, 759 F.2d 504, 507 (5th Cir. 1985) ("The rule that a plaintiff cannot oust removal jurisdiction serves the salutary purpose of preventing the plaintiff from being able to destroy the jurisdictional choice that

---

[5] Other cases have found similarly. *See e.g.*, *Escalante v. Goodyear Tire & Rubber Co.*, 2015 WL 3770929, at *3 (remanding because the "allegations that [the instate dealer] failed to remove the [defective] tire from service because of its age and that [the instate dealer] acted knowingly, conceivably invoke liability for actual knowledge of the defect, triggering liability under § 82.003(a)(6)").

[6] Piercing the pleadings is unnecessary because Evans's state-court petition does not show a reasonable basis for prevailing on any of her claims against Bayou City. *See State Farm Lloyds*, 2012 WL 3985128, at *2 n.1 (declining to pierce the pleadings "given the Court's holding that the claim as pled fail[ed] to state a viable cause of action").

Congress intended to afford a defendant in the removal statue."). Because Evans's only reason for moving to amend is to create a basis for remand, the motion for leave to amend is denied.

## IV. Conclusion

Evans' motion to remand, or alternatively for leave to amend her pleadings to defeat diversity jurisdiction, (Docket Entry No. 8), is denied.

SIGNED on July 17, 2015 at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge