# CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

For and in consideration of the payment to the undersigned Plaintiff, Cathie Evans, as Next Friend of Christian Habhab, a minor, (hereinafter referred to as Releasor), said payment more fully described in Paragraph 2 of this Agreement, the receipt of which is hereby acknowledged, said undersigned, being of lawful age, hereby release, acquit and forever discharge Kawasaki Motors Corp., U.S.A., Kawasaki Motors Manufacturing Corp. U.S.A. and Kawasaki Heavy Industries, Ltd. (hereinafter referred to as Releasees), and all of their agents, servants, dealers, vendors, component part suppliers, attorneys, employees, divisions, parent companies, related companies, affiliates, corporations, partnerships or businesses, from any and all actions, causes of action, claims, demands, damages, costs, expenses, compensation, or obligations, which the undersigned may have against Releasees on account of or in any way growing out of any and all alleged damages, loss of income, loss of earning capacity, mental anguish, emotional distress, pain and suffering of any kind, physical impairment, disfigurement, loss of consortium, loss of companionship, society, support, services, advice, counsel, contributions of a pecuniary value, medical, hospital, attorney fees, or any other damages or expenses which allegedly resulted or may result from an accident which occurred on June 29, 2013, at the Cadasa Ranch, 1340 Fair Park Road, Flatonia, Texas, involving a 2008 Kawasaki 3010 Mule being driven by Maurice Evans, which is the subject vehicle in this lawsuit, Case No. 4:15-CV-00659, styled *Cathie Evans, As Next Friend of Christian Habhab, Minor Child v. Kawasaki Motors Corp., U.S.A.,* filed in the U.S. District Court, Southern District of Texas, Houston Division.

## Agreement

The Parties hereto hereby agree as follows:

1. **Release and Discharge**

   In consideration of the payments referred to in paragraph 2 of this Agreement, a combined present value of ▮▮▮▮▮▮▮▮▮▮, the receipt of which is hereby acknowledged, said undersigned, being of lawful age, hereby release acquit and forever discharge the Releasees, and all past, present and future officers, directors, stockholders, attorneys, agents, servants, representatives, employees, subsidiaries, affiliates, partners, predecessors and successors of the Releasees (collectively the "Released Parties") from any and all past, present or future claims, demands, obligations, actions, causes of action, rights, damages, costs, losses or services, expenses and compensation of any nature whatsoever, whether based on a tort or contract, which the Releasor now has, or which may hereafter accrue or otherwise be acquired, on account of, or in any way growing out of, or which are the subject of, the Plaintiff's Original Petition and all related and amended pleadings, including, without limitation, any known or unknown, foreseen or unforeseen claims, damages, property damage, bodily injury, mental injury, as a result of the occurrence for which the Plaintiff has claimed in the Petition (or may claim) the Releasees are liable.

   This release (the "Release"), on the part of the Releasor, shall be a fully binding and complete settlement between the Releasor, the Releasees, their assigns and successors.

2. **Payments**

As consideration for the promises, agreements, obligations, releases, indemnities, warranties and representations and any and all other undertakings included in this Settlement Agreement and Release, Releasees agree to pay the sums outlined below:

2.1   A total sum of ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ payable to Abraham Watkins and Cathie Evans as Next Friend of Christian Habhab.

2.2   A total sum of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ payable to The Rawlings Company, LLC for it subrogation claims for medical services provided to and on behalf of Christian Habhab, a Minor.

2.3   Periodic payments to Christian Habhab (Payee) made according to the Schedule of Payments as follows (the "Periodic Payments"):

Beginning 07/01/2025, ▮▮▮▮▮▮ for 5 years certain only ▮▮▮▮▮▮▮▮▮▮

Beginning 07/01/2025, ▮▮▮▮▮▮▮▮▮ for 5 years certain only ▮▮▮▮▮▮▮▮▮



▮▮▮▮ guaranteed lump sum on 10/04/2029
▮▮▮▮ guaranteed lump sum on 10/04/2031
▮▮▮▮ guaranteed lump sum on 10/04/2033
▮▮▮▮ guaranteed lump sum on 10/04/2036

The parties hereby state and acknowledge that all sums paid pursuant to this Agreement constitute damages on account of personal physical injuries or physical injuries or physical sickness within the meaning of Section 104(a)(2) of the Internal Revenue Code of 1986, as amended, arising from the physical injuries that resulted from the allegations made in the above-styled case, and no portion of the proceeds paid under this Agreement represent exemplary or punitive damages, nor pre-judgment or post-judgment interest, nor non-physical injuries. All parties understand and agree that none of the settlement funds paid herein are on account of punitive or exemplary damages.

Payments shall be delivered upon the receipt of the foregoing information and an executed copy of this Settlement Agreement and Release.

3.   **Payees's Rights to Payments**

Releasor acknowledges and agrees that the rights to receive the future Periodic Payments described herein ("Periodic Payments") cannot be accelerated, deferred, increased or decreased by Releasor or any payee; nor shall the Releasor or any Payee have the power to sell, mortgage, pledge, encumber or anticipate the periodic payments or any part thereof, by assignment or otherwise. The rights to receive periodic payments granted to the Releasor may not be sold, transferred, hypothecated, pledged, or otherwise alienated in any manner, directly or indirectly, without the prior approval of the then-sitting Judge of this Court, as evidenced by a "Qualified Order" approving such transaction entered after compliance with all requirements

of the Structured Settlement Protection Act, Section 141.001, Texas Civil Practice and Remedies Code, as it now exists or may hereafter be amended, or any successor to such statute. Any purported or attempted sale, transfer, hypothecation, pledge, or other alienation of such payments rights that has not been so approved will be a direct violation of this agreement.

4. **Payee's Beneficiary**

Any payments to be made after the death of the Payee pursuant to the terms of this Settlement Agreement and Release shall be made to such person or entity as shall be designated in writing by the said Payee, upon reaching the age of majority, to the Releasees, the Insurer or the Assignee. If no such person or entity is so designated by said Payee, such payments shall be made to the Estate of the Payee. No such designation, nor any revocation thereof, shall be effective unless it is in writing and delivered to the Releasees, the Insurer or the Assignee. The designation must be in a form acceptable to the Releasees, the Insurer or the Assignee, but in no event shall the request of the Payee be unreasonably withheld or denied.

5. **Consent to Qualified Assignment**

The parties hereto acknowledge and agree that the Releasees and/or the Insurer may make a qualified assignment within the meaning of Section 130(c) of the Internal Revenue Code of 1986, as amended, of the Releasees' and/or Insurer's liability to make the periodic payments required herein. Any such assignment, if made, shall be accepted by the Releasor without right of rejection and shall completely release and discharge the Releasees and the Insurer from such obligation hereunder as are assigned to ***MUTUAL OF OMAHA STRUCTURED SETTLEMENT COMPANY (MOSSCO)*** (the "Assignee"). The Releasor recognizes that, in the event of such an assignment, the Assignee shall be their sole obligor with respect to the obligations assigned, and that all other releases that pertain to the liability of the Releasees and the Insurer shall thereupon become final, irrevocable and absolute.

If the liability to make the periodic payments is assigned by way of a Qualified Assignment, the Assignee's obligation for payment of the periodic payments is no greater than the obligation of the person originally liable (whether by suit or agreement) for payment and from whom the obligation was assigned.

6. **Right to Purchase an Annuity**

The Releasees, the Insurer and/or the Assignee reserve the right to fund its liability to make periodic payments through the purchase of an annuity policy from ***UNITED OF OMAHA LIFE INSURANCE COMPANY*** (the "Annuity Issuer"). The Releasees, the Insurer and/or the Assignee shall be the owner of the Annuity policy and shall have all the rights of ownership. The Releasees, the Insurer and/or the Assignee may have the Annuity Issuer mail payments directly to the Payee. The Releasor shall be responsible for maintaining the currency of the proper mailing address and mortality information to the Annuity Issuer.

7. **Discharge of Obligation**

The obligation of the Assignee to make each Periodic Payment shall be fully discharged upon the mailing of a valid check or electronic funds transfer in the amount of such payment on or before the due date to the last address on record for the Payee with the Annuity Issuer. If the

Payee notifies the Assignee that any check or electronic funds transfer was not received, the Assignee shall direct the Annuity Issuer to initiate a stop payment action and, upon confirmation that such check was not previously negotiated or electronic funds transfer deposited, shall have the Annuity Issuer process a replacement payment.

**8.     Indemnification**

Releasor expressly agree to defend, indemnify and hold harmless the Releasees against any and every future claim or demand for any and all damages and expenses, made by, through, or on behalf of Releasor, including, but not limited to, claims for medical or health care expenses incurred in treating any injury sustained as a result of the Accident. Without limitation of the foregoing and in addition to, Releasor specifically agree to defend, indemnify, and hold harmless the Releasees against any and every (a) claim regarding the proper allocation of the monies paid in settlement herein; (b) claim seeking to enforce any healthcare lien, hospital lien or right of reimbursement for conditional payment filed or asserted as a result of medical or rehabilitation treatment provided to Releasor as a result of the Accident; and (c) claim brought by any person related to the damages suffered by Releasor.

Releasor agree to defend and indemnify Kawasaki Motors Corp., U.S.A., from and against any fine, penalty, suit, regulatory, or administrative proceeding which may be caused by the false or incorrect reporting to Kawasaki Motors Corp., U.S.A. by Releasor of the information requested in Section 2, above.

Releasor agree to indemnify, defend and hold harmless Releasees from and against all claims, demands, actions, rights and causes of action of every kind and nature, including actions for contribution or indemnity, that may hereafter at anytime be asserted against the Releasees arising from or in any manner relating to the Releasor or with respect to the released claims.

The Releasor further agree to indemnify and forever hold harmless and defend and to assume the cost of any defense, including attorneys fees of Releasee from and against any and all liens and/or encumbrances, and any and all suits, attorneys fees, costs and other expenses which arise from or relate to such liens and/or encumbrances.

**9.     Attorney's Fees**

Each Party hereto shall bear all attorneys' fees, expenses and costs arising from the actions of their own counsel in connection with the Plaintiff's Original Petition, this Settlement Agreement and the matters and documents referred to herein, except for reasonable ad litem fees, which will be paid for by the Releasees.

**10.    General Release**

The Releasor hereby acknowledges and agrees that this release is a general release and Releasor further expressly waives and assumes the risk of any and all claims for damages which exist as of this date but of which the Releasor do not know or suspect to exist, whether through ignorance, oversight, error, negligence, or otherwise, and which, if known would materially affect the Releasor decision to enter into this Settlement Agreement.

The Releasor further agrees that they have accepted payment of the sums specified herein as a complete compromise of matters involving disputed issues of law and fact and Releasor assumes the risk that the facts or law may be otherwise than what Releasor believe. It is understood and agreed by the Parties that this settlement is a compromise of a disputed claim, and the payments are not to be construed as an admission of liability on the part of the Releasees by whom negligence and liability is expressly denied.

## 11. Tax Disclaimer

Releasor and Releasor's counsel have not relied on any express or implied representation of the Releasees, or any of their agents as to the tax consequences of this Settlement Agreement.

## 12. Warranty of Capacity to Execute Agreement

The Releasor represents and warrants that no other person or entity has, or has had interest in the claims, demands, obligations, or cause of action referred to in the Petition or this Settlement Agreement and the Releasor has the sole right and exclusive authority to execute this Settlement Agreement and receive the sums specified in this Settlement Agreement; and that Releasor has not sold, assigned, transferred, conveyed or otherwise disposed of any of the claims, demands, obligations, or causes of action referred to in the Petition or this Settlement Agreement.

## 13. Entire Agreement and Successors in Interest

This Settlement Agreement contains the entire agreement between the Releasor and the Releasees with regard to the matters set forth herein and shall be binding upon and inure to the benefit of the executors, administrators, personal representatives, heirs, successors and assigns of each.

## 14. Confidentiality Agreement

Releasor agrees that neither she nor her attorneys, agents, consultants, experts or representatives, shall reveal to anyone the negotiations leading up to this settlement, or any of the terms, sums, numbers, amounts or conditions contained in this Settlement Agreement. Releasors and their attorneys, agents, consultants, experts and representatives specifically consent to this strict confidentiality clause, and shall not disclose the circumstances under which the case was settled or the terms or amounts of this settlement to any person, including but not limited to any media or organizations such as newspapers, magazines, publications, television or radio programs or reporters, associations of or publications for attorneys, such as ATLA and the ATLA Journal, the Texas Lawyer, Texas Trial Lawyers Association, and/or any trial or verdict reporter and settlement reporting services and publications, such as The Texas Blue Sheet, Verdict Reporter and The Texas Reporter.

Releasor expressly agrees that neither she nor her attorneys shall disclose or otherwise cause the disclosure or publication, directly or indirectly, in any trial reporter or other media (including but not limited to those listed in the preceding paragraph), or in print advertisements, law firm brochures, on the Internet, in television or radio advertisements, or in any other marketing or advertising materials, any direct or indirect information, statement, implication, or

insinuation regarding the amount of the settlement by reference to the amount of the medical expenses claimed or incurred, the amount of claimed damages or any amounts brought up by any parties during the course of negotiations.

This confidentiality covenant shall not prohibit Releasor from disclosing the amount of the settlement proceeds to any person holding or asserting a lien thereon, such as medical, disability or workers' compensation insurance carriers, for the purpose of resolving any such lien or to the Internal Revenue Service solely for purposes of income taxation if necessary. Further, nothing contained in this paragraph, however, shall prohibit any party or attorney from disclosing either the existence of this Agreement or its terms to their respective insurance carriers, accountants, financial planners, or to the court in furtherance of the legal process or as otherwise required by a legal duty or obligation owed. Nor shall this paragraph prohibit disclosures made with the prior written consent of all parties to this Agreement. In the event that any party discloses any of the terms of this Agreement to their insurance carriers, accountants, or financial planners, that party shall inform the person or entity to whom the disclosure is made of this confidentiality clause and instruct same that they are bound by this covenant.

The parties further acknowledge that there is a significant benefit to the parties hereto in maintaining the confidentiality of all monies paid in settlement of this claim. The parties further state and agree that the settlement proceeds described herein are not being accepted as consideration for the Releasor's agreement to maintain the confidentiality of the amount of this settlement. Instead, all monies being paid in settlement of this claim are paid on account of personal physical injuries sustained by Releasor, arising from the occurrence described herein.

## 15. Representation of Comprehension of Document

In entering into this Settlement Agreement the Releasor represent that she have relied upon the legal advice of Releasor's attorney, who is the attorney of Releasor's own choice, and that the terms of this Settlement Agreement have been completely read and explained to Releasor by Releasor's attorney, and that those terms are fully understood and voluntarily accepted by Releasor. Releasor specifically acknowledge that she have not relied on any legal advice from the Releasees in entering into this Settlement Agreement.

## 16. Governing Laws

This Settlement Agreement shall be construed and interpreted in accordance with the laws of the State of Texas.

## 17. Additional Documents

All Parties agree to cooperate fully and execute any and all supplementary documents and to take all additional actions, which may be necessary or appropriate to give full force and effect to the basic terms and intent of this Settlement Agreement.

## 18. Effectiveness

This Settlement Agreement and Release shall become effective following execution by the Releasors.

Executed at 29th this ____ day of March, 2016.

_____
CATHIE EVANS, AS NEXT FRIEND OF
CHRISTIAN HABHAB, A MINOR

STATE OF TEXAS       §
                     §
COUNTY OF DALLAS     §

BEFORE ME, the undersigned authority, on this day personally appeared **Cathie Evans, as Next Friend of Christian Habhab, a Minor,** known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that she executed the same for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this 29th day of March, 2016.

_____
Notary Public in and for the State of Texas

[Notary Seal: JESSICA LYNN DEAN, Notary Public, STATE OF TEXAS, My Comm. Exp. May 16, 2016]

**CONSIDERATION RECEIVED AND CONDITIONS AGREED:**

_____
Muhammad "Mo" S. Aziz
State Bar No. 24043538
Federal Bar No. 868540
ABRAHAM, WATKINS, NICHOLS, SORRELS, AGOSTO & FRIEND
800 Commerce Street
Houston, Texas 77002
Telephone: (713) 222-7211
Facsimile : (713) 225-0827
**ATTORNEYS FOR PLAINTIFF**

**APPROVED**

By signing below, I indicate that I will request the Court to accept this settlement and its terms as being in the best interests of Christian Habhab, a Minor.

_____
Ron Bankston
1414 W. Clay Street
Houston, Texas 77019
Telephone: (713) 874-9680
**GUARDIAN AD LITEM FOR CHRISTIAN HABHAB, A MINOR**